## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JANIS HARRISON, | § | |
| | § | |
| | § | |
|     **Plaintiff,** | § | |
| vs. | § | **CIVIL ACTION NO. 3:18-cv-3423** |
| | § | |
| COMPASS GROUP USA, INC., a | § | |
| Foreign For-Profit Corporation, | § | |
| EUREST SERVICES, INC, a Foreign | § | |
| For-Profit Corporation; Mike | § | |
| Fucsko, an individual, Garwin | § | |
| Freeze, an Individual, and Nicole | § | |
| Otis, an individual, | § | |
| | § | |
|     **Defendants.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Janis Harrison ("Plaintiff"), filing her Original Complaint complaining of

Compass Group, Inc., a Foreign For-Profit Corporation ("Compass"), Eurest Services, Inc., a

Foreign For-Profit Corporation ("Eurest"), Mike Fucsko, an individual, Garwin Freeze, an

Individual, and Nicole Otis, an Individual, Defendants, and in support thereof would show the

Court as follows:

### I.

### JURISDICTION, PARTIES AND VENUE

1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and

    1367(a).  The action arises under, and is brought pursuant to, the Constitution and laws of the United

States.  The causes of action alleged by Plaintiff are brought pursuant to 29 U.S.C. §§2601, *et. seq.* known as the Family and Medical Leave Act ("FMLA") and both wrongful interference and anti-retaliation prohibitions contained within said statutes and laws, including the regulations promulgated thereunder.

2.  Plaintiff resides in the City of Dallas, Dallas County, Texas. Plaintiff is an adult female citizen of the United States and was at all relevant times herein entitled to the benefits of, and the protections afforded by, the FMLA.  Plaintiff was at all relevant times herein an "an "eligible employee" of a covered employer within the meaning of 29 U.S.C. § 2611(2)(A).

3.  Compass is a foodservice and support service company comprised of a group of companies that serve restaurants, corporate cafes, hospitals, schools, arenas and museums. Compass is registered to do business in the State of Texas as a Foreign For-Profit Corporation, engaging in an industry affecting commerce.

4.  Compass's primary local business location is in Dallas County, Texas. All Plaintiff's principal employment activities and all acts complained of herein occurred in Dallas County, Texas. Compass was always herein an "employer" within the meaning of, and covered by, the applicable statutes, to wit:  Pursuant to 29 U.S.C. § 2611(4)(A) at all relevant times herein Compass employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

5.  Compass may be served through its officially registered agent, Corporation Service Company d.b.a. CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

6.  Eurest. a division of Compass, is a facilities service company providing a range of self-performed and managed services, including dining services to companies in various business

and industry markets.

7.  Eurest's primary local business location is in Dallas County, Texas. All Plaintiff's principal employment activities and all acts complained of herein occurred in Dallas County, Texas. Eurest was always herein an "employer" within the meaning of, and covered by, the applicable statutes, to wit:  Pursuant to 29 U.S.C. § 2611(4)(A) at all relevant times herein Eurest employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

8.  Eurest may be served through its officially registered agent, Corporation Service Company d.b.a. CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

9.  Garwin Freeze, an individual, is and was always  as hereafter alleged, a managerial employee of Compass/Eurest.  At one time, as hereinafter alleged, Garwin Freeze was Plaintiff's direct supervisor.  For the remainder of Plaintiff's employment with Compass/Eurest, as hereinafter alleged, Garwin Freeze was Regional Manager over Plaintiff and direct supervisor of Mike Fucsko.  Garwin Freeze is a citizen, domiciled at and resident of the City of Prosper, County of Collin, State of Texas USA.

10. Garwin Freeze may be served with process at his residence which is 660 Willowview Drive, Prosper, Texas, 75078.

11. Mike Fucsko, an individual, is and was always as hereafter alleged, a managerial employee of Compass/Eurest.  At the times as hereafter alleged, Mike Fucsko was the direct supervisor of Plaintiff and reported to Garwin Freeze, Compass/Eurest's Regional Manager. Mike Fucsko is a citizen, domiciled at and resident of the City of Allen, County of Collin, State of Texas USA.

12. Mike Fucsko may be served with process at his residence which is 1205 Windgate Way, Allen,

Texas  75002.

13. Nicole Otis, an individual, is and was always as hereafter alleged, a managerial employee of Compass/Eurest and served as its Human Resources Director.  Nicole Otis was authorized by Compass/Eurest to manage Plaintiff's compensation, assigned titles, assignments and ensuring Compass/Eurest complied with the provisions of FMLA. Nicole Otis is believed to be a resident of Charlotte, NC.

14. Nicole Otis may be served with process at her principal place of employment which is 2400 Yorkmont Rd, Charlotte, NC 28217.

15. The employment practices alleged to be unlawful herein and a substantial part of the events or omissions giving rise to Plaintiff's claims were committed within the Northern District of Texas, Dallas Division. Venue is appropriate in this Court pursuant 28 U.S.C. §1391.

## II.
## VICARIOUS LIABILITY—RESPONDEAT SUPERIOR

16. Whenever in this Complaint it is alleged that Compass and/or Eurest did any act or thing, it is meant that Compass's and/or Eurest's supervisors, agents, servants, employees or representatives did such an act and/or that at that time such act was done, it was done with the full authorization or ratification of the Compass and/or Eurest or was done in the normal and routine course and scope of employment of Compass's and/or Eurest's respective supervisors, agents, servants, employees, or representatives.  Specifically, the acts of Compass and/or Eurest described hereafter, were undertaken by then authorized representatives of the Compass and/or Eurest,  including but not limited to the following individuals: Garwin Freeze, Mike Fucsko and Nicole Otis and were performed while in the employment of Company, to further Company's business, to accomplish the objective for which these supervisory and administrative employees were hired, and within the course and scope of that employment or within the authority delegated to these employees. Garwin

Freeze and Mike Fucsko were each given supervisory authority over Plaintiff. As such, Garwin Freeze and especially Mike Fucsko were given complete day-to-day control over the work conditions, duties, and all other aspects of Plaintiff's employment. Nicole Otis was Compass/Eurest's Human Resources Director and had authority from Compass/Eurest to find and offer Plaintiff equivalent employment positions within Compass/Eurest and was a close, critical and influential to Compass/Eurest and its managers regarding all employment, classification and employment decisions made by Compass/Eurest regarding Plaintiff as hereafter described.  But for the assent of Nicole Otis, Compass/Eurest would not have made the unlawful decisions it made as hereinafter alleged.

### III.

### FACTUAL BACKGROUND

17. On May 10, 2008, Compass/Eurest employed Plaintiff initially as a Conference Room Manager to work at, what is now called, Ross Tower in Downtown Dallas, Texas.  Eurest was hired by its client, CBRE, to open five points of service at Ross Tower.  Plaintiff was part of that team.  Her supervisor was Garwin Freeze.

18. Prior to her employment with Compass/Eurest, Plaintiff had sixteen years' experience in food services and facilities management.

19. Plaintiff resided in East Dallas which was an approximate easy 15-20-minute drive to Ross Tower.

20. Within the first year of her employment, Compass/Eurest tasked Plaintiff with additional functions and responsibilities typical of those of a Eurest's Café Store Manager position.

21. Soon thereafter, Compass/Eurest tasked Plaintiff with the functions and responsibilities typical of those of a Eurest's Catering Manager position for the onsite facility at Ross Tower known

as the Forty-Five Oaks Café ("Café").

22. In 2011, the Café, which Plaintiff managed, became a "host" kitchen to Eurest's new account, then called Covance, a clinical research enterprise.  Being a "host" kitchen to Covance, involved the additional responsibility of the Café's preparing and delivering food services, three times daily, seven days a week from the Café to Covance, as Covance did not want food prepared onsite. Covance's facility was located about a 10-minute drive from Ross Tower.

23. Compass/Eurest soon found its new venture with Covance to be high-volume and quite profitable. Garwin Freeze then assigned Plaintiff the functions and responsibilities to manage this new venture. This assignment and its attendant duties and responsibilities were exclusive. All other responsibilities assigned to Plaintiff were lifted.

24. Because these new functions and responsibilities did not fit any previous Compass/Eurest models, Compass/Eurest assigned Plaintiff the job title of Director of Dining.  Garwin Freeze told Plaintiff that, to him, Plaintiff's pay grade was more important than the title, so accordingly, Garwin Freeze made Plaintiff a "Director" rather than that of the lower pay grade of "Chef Manager." Even so, Plaintiff's job duties matched an approximate combination of Dining Services Director and Chef Manager which included the following.

    a. Plaintiff was responsible for overseeing the day-to-day operations of the assigned corporate dining account.  She managed and lead a team of Compass/Eurest associates also assigned by Compass/Eurest to this account.  Plaintiff was responsible for managing client relations and ensuring that the food and services offered was of superior quality. In addition, Plaintiff was responsible for

    b. Maintaining customer, guest and client relationships as well as other Compass/Eurest departments;

c. Work with the Chef and management team in creating menus and providing top quality food services.  In Plaintiff's case, she also had responsibilities for full culinary management of food service operations, the same as that of a Compass/Eurest Chef Manager;

d. Creation, maintenance and overseeing all P&L and budgeting functions as the same pertains to the account;

e. Develop and roll out new culinary programs in conjunction with Compass/Eurest marketing and culinary teams, controlling purchase and inventory costs focusing on sourcing and utilizing local food products.

In short, Plaintiff was responsible for performing all the duties and responsibilities of a Compass/Eurest Dining Services Director and she was responsible for cooking as well.

25. On behalf of Compass/Eurest, Plaintiff managed the Café-Covance venture for approximately five years performing the duties and carrying out the responsibilities summarized in Paragraph 19 above.

26. Mike Fucsko became Plaintiff's direct supervisor in approximately 2014.  Garwin Freeze then became Compass/Eurest's Regional Manager to whom Mike Fucsko reported. Nicole Otis was Human Resources Director for Compass/Eurest.

27. Effective December 31, 2016, Covance ended its relationship with Compass/Eurest.

28. Prior to the ending of the Covance relationship, Plaintiff was diagnosed with adenomyosis, a medical condition which involved, among other things, chronic anemia. Plaintiff's medical care provider permitted management of Plaintiff's condition by prescription but advised Plaintiff that this was not a long-term solution.  Plaintiff's physician recommended Plaintiff to undergo needed and necessary surgery.  Plaintiff then briefly delayed the onset of that necessary surgery until after the announced Covance account closing to avoid any client relations problems due

Case 3:18-cv-03423-E   Document 1   Filed 12/31/18   Page 8 of 19   PageID 8

to Plaintiff's necessary medical absence.

29. After the December 31 closing, Plaintiff's job title, responsibilities, duties and compensation did not change.  Compass/Eurest was then setting up parameters for a new food services project for State Farm Insurance which was then located at Galatyn Commons ("Galatyn") located in Richardson, Dallas County, Texas.

30. Compass/Eurest tasked Plaintiff with the same functions and responsibilities for Galatyn as it did for the Café-Covance venture. Gatalyn is a large corporate campus featuring five large office buildings, conference centers, a full-service cafeteria, multiple dining and meeting areas, an outdoor state and amphitheater.  Galatyn is an approximate easy 20-25-minute drive from Plaintiff's residence, approximately a 10-15 minute longer drive than that to Covance.

31. Compass/Eurest categorized the locations of its client/customers as either "P&L Accounts" or "Subsidized Accounts."  Managers assigned to P&L Accounts were eligible for and received bonuses.  Managers assigned to Subsidized Accounts were not eligible for and did not receive bonuses.   Covance And Galatyn were P&L Accounts.

32. As the initial set-up was completed, State Farm Insurance relocated to another facility. Fortunately, Gatalyn wished to continue its relationship with Compass/Eurest with Jones Lang LaSalle as Compass/Eurest's client instead of State Farm. Jones Lang LaSalle is a large commercial real estate and investment management firm located in Gatalyn.

33. Starting from scratch, Plaintiff worked with Mike Fucsko full-time on the Galatyn project as Galatyn's Dining Services Director and additionally assisted with other job-related tasks, such as required asset audits and occasionally covering for another vacationing Dining Service Director.

34. Plaintiff and her medical provider planned for Plaintiff's required surgery to occur on January

JANIS HARRISON, PLAINTIFF, ORIGINAL COMPLAINT,                                          Page 8

20, 2017. Plaintiff's last planned work-day would be two days before, on January 18.

35. During this brief approximate two-week period before Plaintiff's last planned work-day, Mike Fucsko promised Plaintiff that she would be promoted from Dining Services Director at Galatyn to the position of General Manager at Galatyn. The promotion involved a compensation increase along with increased responsibilities. He praised her for her hard work and her commitment to the company. Plaintiff was very encouraged and looking forward to returning to the Galatyn project after her surgery.

36. Plaintiff had properly requested FMLA leave from Compass/Eurest. Compass/Eurest approved Plaintiff's FMLA request and granted Plaintiff an approved FMLA Leave of Absence through March 5, 2017. Plaintiff also applied for and received for receipt of Short-Term Disability income which paid seventy-five percent of Plaintiff's salary from January 20, 2017 through March 3, 2017.

37. Plaintiff's surgery and recovery were successful.

38. Plaintiff was ready to return to work on March 3, 2017; however, Plaintiff's medical care provider issued a release to return to work without restrictions to be effective the following Monday, March 6, 2017.

39. Plaintiff did return to work on March 6, 2017, believing that Plaintiff continued to have the same functions and responsibilities of Dining Services Director as described in Paragraph 21 above, before and continuing her assignment at the Galatyn project.

40. However, Compass/Eurest had other unforeseen and unlawful plans. Instead of Plaintiff's continuing in the Dining Services Director position at Galatyn, Garwin Freeze and Mike Fucsko intermittently assigned Plaintiff other non-Dining Service Director tasks seemingly at random to other various Compass/Eurest client locations. All these assignments were to Subsidized

Accounts – never P&L Accounts which meant Plaintiff was not eligible for and would not receive any bonuses.

41. These tasks were not performed previously by Plaintiff as Dining Services Director, but rather were routine menial tasks which could have been performed by any hanger-on helper. For example, at one assigned Compass/Eurest client location, Plaintiff was tasked by Mike Fucsko to spend the time opening boxes and unwrapping new signs and catering bowls.  Many of these "other" non-Dining Director related menial tasks were assigned for Plaintiff to report to work at extended client locations, some in Irving and Plano, Texas which were a hard 45-90-minute one-way drive from Plaintiff's residence. These assignments were twice the distance Plaintiff would have traveled to Ross Tower or Galatyn Commons.

42. After her return to work up to the date Defendants terminated her employment, Plaintiff never performed any of the duties and responsibilities of her position as described in Paragraph 21 above.

43. Plaintiff complained about the assignments and these extended drives - one of these randomly assigned locations was over a ninety-minute traffic snarled one-way drive.

44. Mike Fucsko avoided replying to her about her complaint and continued the random assigning of Plaintiff to routine menial tasks – never those duties and responsibilities of a Dining Services Director.

45. On very few occasions, Plaintiff worked on the Galatyn opening checklist from her home.  She had never done this before.

46. From her return to work date of March 6, 2017 to about March 28, 2017, Plaintiff was not paid by Compass/Eurest and as stated herein was assigned only menial tasks she had not previously performed.

47. Plaintiff complained again. Then, on about March 28, 2017, Mike Fucsko notified Compass/Eurest apparently for the first time that Plaintiff had returned from her approved leave of absence and that she should be paid.

48. At various times during March and April 2017, Mike Fucsko sent requests to Plaintiff to cover shifts at other locations.  From time to time, Plaintiff, on her own, was asked by and agreed with several of her co-worker Dining Service Directors to cover them for their vacations and their various absences. Mike Fucsko then rescinded his directions completely and forbade and prevented Plaintiff from covering anyone. He would no longer permit it.

49. On about April 4, without any notice or any conversation of any kind, Compass/Eurest, in collaboration with Garwin Freeze and Mike Fucsko, demoted Plaintiff from the paygrade Director II to the lower paygrade of Director III. Plaintiff's potential for future income growth was adversely affected.

50. Mike Fucsko then hired another individual with the assignment of Dining Services Director for Galatyn-the very job Plaintiff was performing before her FMLA leave and the very job she was promised and entitled to, on her return from FMLA leave. The new manager hired for Galatyn was the boyfriend of Compass/Eurest's manager in Southlake, Sabre. Instead of adhering to and fulfilling FMLA requirements and assigning the position to Plaintiff, Compass/Eurest, Garwin Freeze, Mike Fucsko and Nicole Otis engaged in some sort of patronage.

51. Plaintiff sought medical attention for the mental and physical stresses she suffered because of Compass/Eurest's erratic behavior and mistreatment toward her as described above.

52. On about April 10, 2017, Plaintiff was formally informed by Mike Fucsko that she would not be reinstated to her previous position.

53. Plaintiff then contacted Mike Fucsko' s supervisor, Garwin Freeze, now a Regional Vice-

President of Compass/Eurest. Plaintiff was then told again that she would not be assigned to her previous position and that only temporary non-Dining Director assignments were available. Garwin Freeze then asked Plaintiff if she was resigning.

54. Plaintiff then told Garwin Freeze that she was not resigning, that she wanted her job back and further said that the continuous erratic uncertainties of unrelated assignments by Compass/Eurest led Plaintiff to seek additional medical attention.  Garwin Freeze then advised Plaintiff to contact Compass/Eurest to request an additional leave of absence.  Compass/Eurest approved a leave of absence for Plaintiff effective April 21, 2017 through May 9, 2017.

55. Prior to Plaintiff's contacting Garwin Freeze, Mike Fucsko always seemed to assist Plaintiff regarding her FMLA related requests and made it a point to stay in touch with Plaintiff.  After Plaintiff's contact with Garwin Freeze, Mike Fucsko literally turned his back on Plaintiff and not only ceased providing any assistance to Plaintiff, began to interfere with Plaintiff's ability to do any work at all, much less gain back her position as Dining Services Director.

56. At some point about in mid to late April 2017, Plaintiff's Compass/Eurest email account was interrupted.  Plaintiff was sending emails regarding her job-related issues, but the emails were not received. Plaintiff did not receive emails from Compass/Eurest.  Plaintiff was unaware her company email account had been locked out.

57. On about May 8, Plaintiff emailed Mike Fucsko asking where Plaintiff should report to work the next day-her return to work day of May 9.  Mike Fucsko did not respond.

58. On about May 11, 2017, Plaintiff emailed Mike Fucsko and Garwin Freeze inquiring about what positions are open for her. Plaintiff received no response.

59. On about May 15, 2017, Plaintiff emailed Compass/Eurest from her private email account and telephoned Compass/Eurest advising about the email interruption and inquiring where and

when Plaintiff should report to work.

60. Compass/Eurest told Plaintiff that her recent leave of absence paperwork was not complete. Plaintiff resubmitted it the next day.

61. Plaintiff and Compass/Eurest then communicated about open positions, Plaintiff's status and pay. Nicole Otis offered Plaintiff a temporary position as a floater assuming a bench rule performing duties and responsibilities as needed. Nicole Otis then then advised Plaintiff that Plaintiff should seek other employment elsewhere.

62. On June 7, 2017, Plaintiff inquired of Compass/Eurest if she was still employed and that she had received no pay since her return to work date of May 9, 2017.

63. On June 9, 2017, Nicole Otis told Plaintiff that she, Nicole Otis was waiting to hear from recruiters about open positions in other companies.  Nicole Otis then offered Plaintiff a lesser position in another company within the Compass Group which was two lower paygrades and an assignment to a client location that was some sixty (60) miles roundtrip from Plaintiff's residence.

64. That same day Nicole Otis notified Plaintiff that since Plaintiff declined that job offer, she would be considered to have then resigned and that she would be paid from May 15 through May 24, 2017.

65. On June 9, 2017, Compass/Eurest advised Plaintiff that her return to work date was not May 9, 2017 but rather May 15 and that her resignation was effective May 24. Plaintiff disagreed.

66. On July 3 and July 7, 2017, Plaintiff received two direct payroll deposits from Compass/Eurest. On July 10, 2017, Compass/Eurest requested reimbursement from Plaintiff for those two deposits stating that Plaintiff's employment termination was processed incorrectly.

67. At all times during Plaintiff's employment with Compass/Eurest, Plaintiff received annual

raises and favorable reviews.

68. Plaintiff's complaints about returning to work to her pre-FMLA job position intensified management's hostilities towards her.

69. Plaintiff began being singled out for assignments not given to others bearing her same position.

70. Over the course of a few weeks' time, Plaintiff's meetings and interactions with management personnel became increasingly more hostile.  Management's attitudes toward Plaintiff grew even more intensely hostile, rude and insulting.

71. Garwin Freeze, Mike Fucsko and Nicole Otis refused to provide Plaintiff any meaningful remedy whatsoever and Nicole Otis even advised Plaintiff to seek employment elsewhere.

72. Compass/Eurest had Plaintiff in a vice grip and would not let go. Garwin Freeze, Mike Fucsko and Compass/Eurest willfully and intentionally disregarded Plaintiff's rights under FMLA and each of them retaliated against Plaintiff when she voiced complaints about it.

73. Garwin Freeze, Mike Fucsko and Compass/Eurest persisted in this unlawful conduct until Compass/Eurest unilaterally announced Plaintiff had resigned – which Plaintiff later discovered was not a resignation but rather wrongfully classified as a termination.

74. What should have been the fulfillment of a chef's career with a premier dining services company was anything but that. It was a nightmare.

## IV.

## CAUSES OF ACTION
## A. VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

## 1. INTERFERENCE WITH FMLA RIGHTS UNDER 29 U.S.C. § 2615(a)(1)

75. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

76. Plaintiff was, always herein, an eligible employee under the FMLA.

77. Compass/Eurest was, always herein, an employer as defined in the FMLA.

78. Plaintiff was, always herein, entitled to leave under the FMLA.

79. Plaintiff gave her employer notice of Plaintiff's intention to take said leave, which her employer approved.

80. Plaintiff was denied benefits to which she was entitled under the FMLA.

81. Plaintiff was qualified for, and requested, leave pursuant to the Family and Medical Leave Act ("FMLA") from Company.  Company violated Plaintiff's rights under the FMLA by interfering with, restraining, and/or denying her the exercise of or the attempt to exercise her rights under the FMLA and further, specifically, by retaliating against Plaintiff during following a medical leave of absence under the FMLA by not restoring Plaintiff to her pre-FMLA job position, wrongfully refusing to pay Plaintiff, wrongfully demoting Plaintiff to a lower job classification and wrongfully terminating Plaintiff's employment.

82. Plaintiff seeks all rights and remedies available to her including but not limited to reinstatement, actual and compensatory damages, and exemplary damages.

### 2. WRONGFUL DISCRIMINATION AND RETALIATION UNDER 29 U.S.C. § 2615(a)(2)

83. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

84. Plaintiff was always herein protected under the FMLA.

85. Plaintiff suffered adverse employment decisions because of Plaintiff's lawful exercise of a leave request under the FMLA.

86. After complaining to management of maltreatment, Plaintiff was subsequently and repeatedly harangued, ignored, wrongfully assigned and ultimately terminated by her employer, while Plaintiff was on approved FMLA leave and returned as directed, in direct

violation of the FMLA.

### 3. RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT.

87. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

88. As herein alleged, Plaintiff's employer illegally retaliated against Plaintiff because she was eligible for and requested FMLA leave which was approved by her employer.  Further, Plaintiff complained of the maltreatment described, which only infuriated the Company to undertake more and intense retaliatory acts against Plaintiff.  Plaintiff's employer had no legitimate business reasons for any of such acts.  Each act of retaliation is in violation of FMLA's anti-retaliation provision.

### B. EMOTIONAL DISTRESS AND SEVERE MENTAL ANGUISH AND COMPENSATORY DAMAGES.

89. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

90. As a direct and proximate result of Company's willful, knowing, and intentional discrimination and retaliation against her, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

91. The above-described acts on Company's part were undertaken in violation the FMLA and proximately caused Plaintiff substantial injuries and damages.

## V.

## JURY DEMAND

92. Plaintiff requests that this action be heard before a jury.

## VI.

## DAMAGES

93. The Company's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff in her occupation, trade and business. Because of Company's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer emotional and mental health injuries, humiliation, mental anxiety and stress, and other damages.  Plaintiff has suffered these direct injuries as a proximate result of the unlawful discriminatory practices, policies and procedures of Company.   Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

94. Because of Company's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action Plaintiff has agreed to pay her attorney reasonable attorney' s fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

95. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

96. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Company. Plaintiff also seeks post-

judgment interest at the maximum rate allowed by law if Company does not promptly tender damages assessed against them and to avoid unjustly enriching Company.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff prays that the Company be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against the Company for:

a.     Permanent injunction enjoining the Company, its agents, successors, employees, and those acting in consort with the Company from engaging in any employment practice which interferes with or is in retaliation thereof for rights protected under the FMLA.

b.     All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement, or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, and all other statutory relief at law, and equity;

c.     Compensatory damages for pain and mental suffering in the past and future;

d.     Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e.     Reasonable attorney's fees, with conditional awards in the event of appeal;

f.     Pre-judgment interest at the highest rate permitted by law;

g.     Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h.     Costs of court and expert witness fees incurred by Plaintiff in the preparation and

prosecution of this action; and

i.        Such other and further relief, at law or in equity, to which Plaintiff may be entitled,

whether by this Complaint or by any amendment hereto.


Respectfully submitted,



 *s/        David M. Curtis*

**DAVID M. CURTIS &ASSOCIATES, PC**
Texas State Bar No. 0005270901
381 CASA LINDA PLAZA
STE. 103
DALLAS, TEXAS 75218
Telephone: (800) 961-4201 EXT. 101
Facsimile:  (800) 532-2501
Email:  *david@laborassociates.com*

**ATTORNEYS FOR PLAINTIFF**